JOE HOELZEMAN JR. *v.* STATE OF ARKANSAS

5207                                                406 S. W. 2d 883

Opinion delivered October 17, 1966

*Wright, Lindsey & Jennings* and *William R. Overton,* for appellant.

*Bruce Bennett,* Attorney General; *Jim Wood,* Asst. Atty. Gen., for appellee.

OSRO COBB, Justice. This case involves a re-examination of our statutory requirements in perfecting appeals from inferior courts to the circuit court.

## INTRODUCTORY FACTS

At a point some three miles north of Morrilton on Highway No. 9 appellant lost control of his car and went through a ditch some 18 feet in width and struck and knocked over a farm fence post. He was alone and there were no witnesses other than appellant to the incident. Appellant could not extricate his car and locked it and when he reached a telephone called State Patrolman Bill Mitchell to report the incident, and to inquire if his car could be safely left at the scene overnight. It is undisputed in the record that Patrolman Mitchell told him he could do so and, in fact, the officer promised appellant that he would go with him to the scene the following morning; but, instead, went to the scene independently and thereafter arrested appellant for reckless driving.

Appellant pleaded not guilty and at the hearing before the Justice of the Peace, State Patrolman Mitchell was the only witness to testify for the prosecution, and he asserted that he had concluded from the skid marks, which were not clearly identified with appellant's car, that appellant must have been going at a high rate of speed at the time of the accident. On cross examination the officer admitted that appellant had reported the incident to him promptly and had stated that he had been proceeding in a careful and prudent manner when a cow jumped upon the highway, causing him to swerve to avoid a collision, and that in doing so he lost control of the car and possibly stepped on the accelerator rather than the brake. Solely upon the inferences drawn from the markings at the scene by Officer Mitchell, appellant was convicted of the offense of reckless driving and judgment was entered fixing a penalty of $100.00 fine, $50.00 of same to be suspended on the condition that appellant write for the court "I will not drive in a reckless manner" 500 times.

Appellant, who was not represented by counsel at his trial before the Justice of the Peace, advised the Justice of the Peace on the record that he desired to appeal the case to the circuit court. Significantly, the Justice of the Peace advised the defendant, not once but twice, that he would prepare the papers for appellant's appeal. See page 55 of the trial transcript. Thereafter, appellant made repeated requests of the Justice of the Peace to prepare and file the transcript perfecting his appeal to the circuit court and, in reply to each such request, the Justice of the Peace advised appellant that he would do so in time to protect the interest of appellant as to his appeal. Unhappily, the 30 days time in which to file the transcript on appeal transpired without the Justice of the Peace having performed his promises and assurances to appellant. Immediately following the default of the Justice of the Peace in failing to file the transcript, appellant filed his affidavit for an appeal of his conviction in the circuit court. Motion was made to dismiss the appeal because of failure to file the transcript within 30 days and upon hearing the circuit court dismissed appellant's appeal. It is from this action that the case reaches us for review.

Appellant contends that it was the positive and inescapable duty of the Justice of the Peace to file the transcript of the record and that any duty upon appellant in the matter was that of exercising reasonable care and prudence as to those matters relating to the appeal which were within his personal control. On the other hand, appellee takes the position that even if the Justice of the Peace had in fact misled appellant by his promises and assurances to file the transcript, that the expiration of the 30 day time limit foreclosed appellant's right of appeal.

*Appellant's contention of error in dismissing his appeal.*

The question of fixing the responsibility for filing the certified transcript of proceedings in cases appealed from a judgment of the Justice of the Peace with the circuit court has been the subject of considerable legis-

lative action by our General Assembly over the years.

In 1908 existing statutory provisions made it the duty and responsibility of the Justice of the Peace to file such transcripts. *See* c. 151, *Section* 2, *Acts of* 1905. This Court in a unanimous opinion, *Cain* v. *State*, 86 Ark. 455, 111 S. W. 267, (1908), noting that the Justice of the Peace had failed to seasonably file the transcript and that appellant's appeal had been dismissed because thereof, reversed the dismissal of the appeal, stating:

"Section 2 of the Act of April 11, 1905, makes it the duty of the justice, and not of the appellant, to file the transcript in the circuit clerk's office."

In 1939, Act 323 was passed by our General Assembly regulating appeals from inferior courts to the circuit courts. We quote Section 1 thereof, which is pertinent:

"A party who appeals from a justice of the peace judgment or a common pleas judgment or a municipal court judgment must file the transcript of the judgment in the office of the circuit court clerk within 30 days after the rendition of the judgment. If the transcript of the judgment is not filed within 30 days after the rendition of the judgment, execution can be issued against the signers of the appeal bond."

The language quoted from said Act 323 of 1939 cannot be said to be ambiguous. It placed the responsibility for seasonably filing transcripts upon appellants, rather than upon the Justice of the Peace.

Obviously, general opposition developed as to the placement of this responsibility upon the appellants as the General Assembly in 1953 passed Act 203 for the express purpose of repealing Act 323 of 1939, and removing this responsibility from appellants and placing same again squarely upon the Justice of the Peace. We

quote Section 1 of Act 203 of 1953, which is the last statutory expression of our General Assembly upon this subject, same now appearing as *Ark. Stats. Ann.* 26-1307, Vol. 1, (Repl. 1962):

> "26-1307. *Clerk or justice of peace to file transcript of judgment within thirty days.* If a party appeals from a justice of the peace judgment the clerk of the court or the justice of the peace of the court from which the appeal is taken must file the transcript of the judgment in the office of the circuit court clerk within thirty (30) days after the rendition of the judgment. (Acts 1939, No. 323 § 1, p. 851; 1953, No. 203, § 1, p. 645)."

The language of the 1953 statute again is clear and free of any ambiguity. Its purpose is equally clear, being the removal of the evils experienced under the previous law which made appellants responsible for filing their transcripts on appeal. It also repealed authority to issue execution against the signers of the appeal bond as set forth in the Act of 1939.

In *Whitely* v. *Pickens*, 225 Ark. 845, 286 S. W. 2d 4 (1956), we held that the Act of 1953 made it the duty of the Justice of the Peace to prepare and file the transcripts and placed a companion burden upon appellants to see that transcripts were duly filed. It is clear that in situations where the trial Justices of the Peace die, become incapacitated, depart the state or advise the appellant that they are not going to prepare and file the transcript, that an appellant in the face of such notice must assume the burden of taking prudent and diligent measures to protect his rights of appeal, eliminating, of course, therefrom burdens of a character completely beyond the control of such appellants.

In this particular case, which is factually distinguishable from Whitely v. Pickens, *supra,* every time appellant asked the Justice of the Peace to proceed with the filing of his transcript on appeal, appellant was un-

equivocally advised by the Justice of the Peace that same would be done in time to protect his interests, *i. e.,* 30 days from judgment. These unfulfilled promises served to deprive appellant of a proper basis in fact for a petition for relief by mandamus. We are also confronted with the inescapable fact that this appellant could not control the actions of the Justice of the Peace in preparing and filing the transcript, nor could this appellant personally presume to prepare a certified transcript of the proceedings. These functions were peculiarly within the power of the Justice of the Peace.

The constitutional guaranty of a fair and impartial trial of one accused of a crime could become a nullity if trial courts are permitted to mislead persons convicted of a crime as to matters necessary to their appeals and so as to effectively deny such persons appellate review.

Appellant vigorously sought to prosecute his appeal. He made repeated requests of the Justice of the Peace to file the transcript and when the Justice of the Peace defaulted in filing his transcript, appellant filed his affidavit of appeal in the circuit court within a matter of two days. The Justice of the Peace finally filed the certified transcript some 90 days after the judgment of conviction. Thus we conclude that appellant diligently, prudently and seasonably met every burden which could be reasonably placed upon him in seeking appellate review in the circuit court.

The following facts in this case are pertinent:

(a) Here, the trial court and not a deputy or clerk personally made the explicit assurances and promises to appellant.

(b) There was no showing that the certified transcript had been seasonably prepared by the Justice of the Peace, and that appellant had been called to pick it up and file it himself if he cared to do so.

(c) The record here shows no inadvertence or

oversight by the Justice of the Peace with reference to his statutory duty to file the transcript; but, on the contrary, it indicates a deliberate course of action to deprive appellant of his appeal.

(d) Appellant did not stand idly by but diligently and persistently importuned the Justice of the Peace to make certain that the transcript was properly and seasonably filed to protect his rights on appeal, each time being assured that this would be done.

So long as appellant was being assured by the Justice of the Peace that the transcript would be seasonably filed as required by law, appellant could rely thereon. There is certainly no presumption of law that a public official will refuse to discharge a duty detailed by statute.

It is doubtful, in view of the assurances of the Justice of the Peace, that appellant could state adequate grounds for relief by mandamus prior to the default as to such promises.

This appellant seasonably and prudently met every reasonable burden which was his in respect to this appeal. It would abort the ends of justice to deny appellant de novo review in the circuit court.

For analogous reasoning, see *Marshall Motor Service v. Norm Co.,* 194 Ark. 805, 109 S. W. 2d 662 (1937), wherein we stated:

"Of course, if there is a satisfactory showing that the delay is due to matters over which the appellant had no reasonable control, and justice requires that the delay be disregarded and that the cause be heard de novo on its merits, then the Circuit Court should overrule a motion to dismiss."

The cause is reversed and remanded for further proceedings on the appeal from the judgment of the Justice of the Peace.