Brandon J. Harrison, Judge, dissenting.
Should the circuit court's dismissal of Roy Treat's de novo appeal from district court to circuit court be reversed and his case reinstated? That is the question. The just and fair answer is a resounding "Yes, let him appeal."
I.
Treat was convicted of speeding and driving while intoxicated (first offense) in White County District Court, Rose Bud Division, on 17 November 2017. On December 21, Treat filed an affidavit in the circuit court stating that he had requested a certified record from the district clerk on December 4 but "[t]o date, the Rose Bud District Clerk has not prepared the record to be filed with the White County Circuit Court." By December 27, Treat had received a certified copy of the docket sheet and the district court record and filed them in the circuit court.
On 22 March 2018, the State moved to dismiss Treat's appeal to the circuit court. It argued that he had failed to pay the $ 5 fee that is required when a district court clerk is asked to certify a record for an appeal to circuit court; and the failure to pay the fee deprived the circuit court of jurisdiction over Treat's appeal from district court. On April 25, the circuit court held a hearing on the State's motion and ruled from the bench that it would dismiss Treat's appeal because, although Treat had already received the record, he did not send $ 5 to the clerk's office when he initially submitted his request that the district clerk certify the record for an appeal. On April 27, Treat's lawyer sent a $ 5 check by certified mail to the district court clerk, but she refused to negotiate it.
On May 3, Treat filed a written objection to the State's proposed order of dismissal. Treat argued that the circuit court obtained jurisdiction when he filed the affidavit on December 21 in compliance with Arkansas Rule of Criminal Procedure 36. He pointed out that there was literally no clerk to certify the record when he initiated the certification process. Treat also argued that the failure to demand and collect the fee was a clerk's-office issue that should not be held against him. Treat attached information from six White County District Court clerks that he had obtained through an Arkansas Freedom of Information Act (FOIA) request.[1] The mining effort revealed that some district court clerks' offices in White County never collected or invoiced fees when asked to prepare a record for an appeal to the circuit court. Treat informed the circuit court that during the time period requested *227 and according to the clerks who responded to his FOIA requests, in only nine out of 139 cases appealed from district court to circuit court in White County-a mere six percent-did district clerks collect a record-certification fee. (By our count, the reporting clerks had collected fees in ten of 139 appeals, some were for $ 5, some were $ 15. In any event, the fee-collection percentage rate was seven percent at most.)
The Rose Bud District Court clerk did not report to Treat the number of appeals in which a fee was collected for certifying a record for an appeal to circuit court; the only information that office apparently released was one receipt-for a $ 15 fee that was charged and collected in 2017 for "certified dockets."
The circuit court was unmoved by the alarming disparity in fees charged and collected across the county and dismissed Treat's case for lack of jurisdiction. The court apparently reasoned that a dismissal was proper because the district court clerk was not obligated to prepare and certify a docket sheet until Treat paid $ 5. When you put it all together, the court dismissed Treat's appeal because he had failed to timely pay the minimum fee required under Ark. Code Ann. § 16-17-124 (Supp. 2017) and did not file a certified docket sheet in the circuit court within thirty days of the November 17 district court judgment. As for the Rule 36(d) affidavit, the court did not allow it to extend the usual thirty-day deadline to appeal because Treat had not initially paid the fee.
Treat appeals again.
II.
That is the procedural history told with some added details that the majority did not provide. We now turn to the testimony taken when the circuit court held the hearing on the State's motion to dismiss because it provides more on what happened, when, and why.
The parties do not dispute that the Rose Bud division lacked an official district court clerk on December 4. Recall that is the day Treat's lawyer sent a request by facsimile to the Rose Bud district clerk's office asking that a certified record of the district court conviction be prepared. Opposing counsel, the Rose Bud city attorney, was copied on the December 4 facsimile. Treat's lawyer told the court during the hearing that he had called the Rose Bud court building and was told by the mayor's assistant that "there was no one working in the Clerk's office."
The district court clerk, Ms. Margo, had left the office on September 15. Her successor, Robin Hill, began on December 6. That is why there was no clerk on December 4 to handle Treat's request. Enter the chief of police. Rose Bud's chief of police, Steven Shaumleffel, confirmed that the Rose Bud District Court received a fax from Treat's lawyer on 4 December 2017. The chief said that he remembered getting a fax but did not understand it "because [he'd] never received a fax before." So he called the city attorney, who had opposed Treat in district court, and asked him what to do. Chief Shaumleffel said that he and clerk Hill certified the docket sheet on December 21. When asked, "Did the City of Rose Bud ever receive payment to certify the docket?" the chief replied, "No." And when Treat's lawyer asked, "But on December 21st, you went ahead and mailed a certified copy of the docket anyway?" The chief said, "Yes sir."
On cross-examination, when asked who answered the calls to the clerk's office if the clerk was not there, Chief Shaumleffel said, "Either I do or my City lady does." The chief agreed it was possible that a woman who worked at the city office did *228 not tell Treat's lawyer that there was a $ 5 fee. Treat's lawyer then asked, "So, if I called and asked if there was a fee and no one told me there was a fee, how would I be expected to know there was a fee?" The chief said, "That's why I went ahead and sent it to you, I guess." The chief later told the court that he mailed the certified docket sheet to Treat's lawyer the same day that he received a postage-prepaid envelope from Treat's attorney. The $ 5 fee had not been paid when the record was sent to Treat's lawyer.
III.
The majority holds, without prior warning in this case of first impression, that Treat's de novo appeal must be dismissed for lack of appellate jurisdiction because he failed to timely file a record in the circuit court. They base their decision in no small measure on Arkansas Code Annotated § 16-17-124 (Supp. 2017), which states:
(a) When required to make a certification of disposition of court proceedings, including without limitation certified copies of the docket, certified copies of civil or small claims judgments, and appeal transcripts, the district court shall collect a fee of not less than five dollars ($ 5.00) per case for preparation of the original.
Subsections (c), (d), and (i) of Arkansas Rule of Criminal Procedure 36 are also at issue. The majority focuses on subsection (c); but we should give subsection (d) pride of place in this case.
(c) How Taken. An appeal from a district court to circuit court shall be taken by filing with the clerk of the circuit court a certified record of the proceedings in the district court. Neither a notice of appeal nor an order granting an appeal shall be required. The record of proceedings in the district court shall include, at a minimum, a copy of the district court docket sheet and any bond or other security filed by the defendant to guarantee the defendant's appearance before the circuit court. It shall be the duty of the clerk of the district court to prepare and certify such record when the defendant files a written request to that effect with the clerk of the district court and pays any fees of the district court authorized by law therefor. The defendant shall serve a copy of the written request on the prosecuting attorney for the judicial district and shall file a certificate of such service with the district court. The defendant shall have the responsibility of filing the certified record in the office of the circuit clerk. Except as otherwise provided in subsection (d) of this rule, the circuit court shall acquire jurisdiction of the appeal upon the filing of the certified record in the office of the circuit clerk.
(d) Failure of Clerk to File Record. If the clerk of the district court does not prepare and certify a record for filing in the circuit court in a timely manner, the defendant may take an appeal by filing an affidavit in the office of the circuit clerk, within forty (40) days from the date of the entry of the judgment in the district court, showing (i) that the defendant has requested the clerk of the district court to prepare and certify the record for purposes of appeal and (ii) that the clerk has not done so within thirty (30) days from the date of the entry of the judgment in the district court. The defendant shall promptly serve a copy of such affidavit upon the clerk of the district court and upon the prosecuting attorney. The circuit court shall acquire jurisdiction of the appeal upon the filing of the affidavit. On motion of the defendant or the prosecuting attorney, the circuit court may order the clerk of the district court to prepare, *229 certify, and file a record in the circuit court.
....
(i) District Court Without Clerk. If a district court has no clerk, any reference in this rule to the clerk of a district court shall be deemed to refer to the judge of the district court.
Ark. R. Crim. P. 36 (2018).
Everyone agrees that Rule 36's thirty-day period is jurisdictional. Roberson v. State , 2010 Ark. 433, at 5, 2010 WL 4524561. Treat did not meet the initial thirty-day deadline, which expired on December 18. Consequently, Treat had to meet the forty-day deadline that appears in Rule 36(d), the so-called "affidavit option." I conclude that he did, given the peculiar facts and Rule 36(d)'s plain terms.
Regarding subsection (c) of Rule 36 and the majority's reliance on it, no case from either this court or the supreme court has held that the subsection's statement that a defendant must "pay any fees of the district court authorized by law" is jurisdictional. And though they apply a "strict compliance" standard, our supreme court has previously used a "substantial compliance" standard in a Rule 36 case. True, the supreme court found that there was no substantial compliance on the facts, but the concept is not a foreign one to Rule 36. Roberson , 2010 Ark. 433, at 5. See also Roberson v. Helder , 794 F.Supp.2d 985 (W.D. Ark. 2011) (federal habeas relief granted to a criminal defendant denied a state court appeal based on an untimely notice of appeal).
This outlier of a case is best decided under subsection (d) of Rule 36. The reason subsection (d), and not subsection (c), governs is because no certified docket was available to Treat within the initial thirty-day period. Eventually, however, the Rose Bud city attorney instructed Chief Shaumleffel to mail the certified docket sheet and record to Treat's lawyer in Little Rock; that was done on December 21. And the chief did so although the city had neither received the $ 5 certification fee nor demanded payment from Treat. By the chief's own testimony, no district court clerk was available to certify the docket when Treat's December 4 request was made. It is also undisputed that no demand to pay a $ 5 fee issued from the clerk's office to Treat. Further, nothing in the record shows that the district judge-the sole person who was authorized to act as clerk in the absence of a clerk-was ever informed about Treat's December 4 certification request. See Ark. R. Crim. P. 36(i).
The unusual facts in this case pushed Treat to subsection (d), and he complied with that subsection of Rule 36. No one contests that. Again, the rule states, "The circuit court shall acquire jurisdiction of the appeal upon the filing of the affidavit." No fee requirement appears in the affidavit option. Nor does section 16-17-124 contain a time limit on when the fee must be paid. In fact, the statute does not even set an exact fee amount to be paid; only a minimum amount is designated.
To sum up: the circuit court dismissed Treat's appeal knowing that in a mere six-to-seven percent of the appeals from district court to circuit court was the fee at issue in this appeal ever collected; no authorized person in the Rose Bud clerk's office demanded payment of a fee to prepare the record for an appeal to circuit court; and the certified record was mailed to Treat by the chief of police although no fee had been paid. Finally, when Treat tendered the fee (albeit late in the process), it could have been accepted and the appeal allowed to proceed in the circuit court but was not.
*230 IV.
This case directly implicates a citizen's right to a de novo appeal from a district court to a circuit court, which includes the inviolate right to a jury trial, among other protections. Given the peculiar circumstances under which the circuit court's dismissal occurred and having applied Rule 36(d)'s plain terms, which do not reference a fee, I would reverse the order of dismissal and reinstate Treat's case in circuit court.
Even if the majority is correct, they should apply the inaugural jurisdictional rule prospectively. Doing so would not only account for the comedy of errors that is this case, it would also protect the appeals (civil and criminal) from district court to circuit court that are currently pending in White County. Given the majority's decision today, we know-to a high degree of confidence based on the FOIA information-that a significant number of appeals to circuit court are now subject to a "no fee paid" dismissal, even if an inquiring pro se party or lawyer was told by a clerk's office that no fee was required.
Vaught, Hixson, and Brown, JJ., join.

Treat's lawyer sent FOIA requests by facsimile to the district court clerks in White County and asked how many cases had been appealed to the White County Circuit Court in the last three years and in how many of those appeals (civil and criminal) had the district clerks collected a fee when asked to certify a record. The record filed in this court shows Treat received responses from clerks in Judsonia, Bald Knob, Searcy, Kensett, and McRae. The clerks in Judsonia, Bald Knob, and Searcy reported that no record-certification fees had been collected for appeals from the district court to the circuit court during the time periods reported.